UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSE OSORIO and ROMAN XOLOCOTZI on behalf of themselves and as class representatives of all those similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>MATHEWS PRIME MEATS, INC. and MATHEW KOINIS, individually,<br><br>Defendants. | **13 Civ. 1292 (ADS) (SIL)**<br><br>**ECF CASE** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Lipman & Plesur, LLP
*Attorneys for Defendants*
500 North Broadway, Suite 105
Jericho, New York 11753
Telephone:      (516) 931-0050

**TABLE OF CONTENTS**

I.     INTRODUCTION ....................................................................................................... 1

II.    PROCEDURAL HISTORY........................................................................................ 1

III.   STATEMENT OF FACTS ......................................................................................... 1

IV.    ARGUMENT.............................................................................................................. 3

      A.   Summary Judgment Standard ........................................................................ 3

      B.   Plaintiffs Are Exempt From Overtime Under the MCA Exemption As They
          Drove Trucks In Interstate Commerce, Including The Intrastate Leg Of Interstate
          Commerce ....................................................................................................... 3

V.     CONCLUSION......................................................................................................... 10

i

## I.    INTRODUCTION

Plaintiffs' case should be dismissed as they are exempt from the overtime requirements of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., ("FLSA") and the New York Labor Law ("NYLL") pursuant to the Motor Carrier Act ("MCA") exemption.  Plaintiffs drove Defendants' trucks for the intrastate leg of interstate travel in order to deliver out of state goods pursuant to customers' orders thus forming a practical continuity of movement across state lines. As the material facts in this matter are not in dispute, summary judgment is appropriate.

## II.    PROCEDURAL HISTORY

Plaintiffs filed a Complaint against Defendants on March 12, 2013, an Amended Complaint March 15, 2013 and a Second Amended Complaint April 3, 2013, alleging overtime pay violations under the FLSA and NYLL (First and Second Claims) and failure to pay such overtime pay in a timely manner (Third Claim).  See Second Amended Complaint.  Defendants filed an Answer on July 8, 2013 that, *inter alia*, denied all relevant allegations and asserted affirmative defenses, including the MCA exemption.  See Answer.

Defendants' request for a Pre-Motion Conference seeking permission to file a Summary Judgment Motion was granted on October 9, 2014 and a pre-motion conference was held and a briefing schedule set on November 5, 2014.  See Dkt. Nos. 30 and 32 ("Dkt. No. ___" as used herein refers to the ECF Docket Number for this matter ).  Defendants now move for summary judgment and ask the Court to dismiss this case based upon the MCA exemption.

## III.    STATEMENT OF FACTS

Defendant Mathews Prime Meats, Inc. ("Mathews Prime") is a food distribution company.  (Defendants' Civil Rule 56.1 Statement of Undisputed Facts ("Defs' Rule 56.1") ¶ 1.)

Plaintiffs Roman Xolocotzi and Jose Osorio worked as delivery workers for Mathews Prime. (Defs' Rule 56.1 ¶ 2.)  Plaintiffs drove trucks which weighed over 10,001 pounds and which were owned by Mathews Prime, to make deliveries.  (Defs' Rule 56.1 ¶¶ 2, 3.)

Mathews Prime ordered products requested by customers that would then be delivered by Plaintiffs to such customers.  (Defs' Rule 56.1 ¶ 6.)  Products were ordered by Defendants to fill actual or anticipated client orders.  (Defs' Rule 56.1 ¶ 7.)  Defendants ordered over 100 products that are identified in Paragraph 11 of Defendants' Rule 56.1 Statement from out of state vendors to fulfill orders from specific customers in New York that were delivered by Plaintiffs. (Defs' Rule 56.1 ¶ 11.)

Plaintiffs did not know how far in advance customers placed all orders.  (Defs' Rule 56.1 ¶ 5.)  Plaintiffs did not know where Defendants would order all products from.  (Defs' Rule 56.1 ¶ 8.)  Plaintiffs did know that if there was a special order that a customer wanted, the customer would place the order with Mathews Prime, and the Company would get that product and have it delivered by Plaintiffs (Defs' Rule 56.1 ¶ 9.) and that such products were not repackaged.  (Defs' Rule 56.1 ¶ 10.)

These products ordered from out of state for specific customers in New York are initially held at Mathew's Prime and then transported to the customers by Plaintiffs. (Defs' Rule 56.1 ¶ 6, 12.)  If a product is ordered from out of state for a specific customer in New York, and in the rare event the customer cancels the order, then Mathew's Prime will have a loss.  (Defs' Rule 56.1 ¶ 13.)  During all relevant times, both Plaintiffs delivered goods to customers in New York that were ordered by Defendants from out of state specifically for such customers.  (Defs' Rule 56.1 ¶¶ 6, 7, 9, 11-13.)

2

## IV.    ARGUMENT

### A.    Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and…[the moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The main purpose of summary judgment is to dispose of meritless claims before engaging in a frivolous and costly trial. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986), *cert. denied*, 480 U.S. 932 (1987). Even though an employer bears the burden to prove an exemption under the FLSA applies, it is simply by a preponderance of the evidence as in any other civil matter. *Marshall v. Burger King Corp.*, 504 F. Supp. 404, 406-07 (E.D.N.Y. 1980), *aff'd*, 675 F.2d 516 (2d Cir. 1982); *Golden v. Merrill Lynch & Co., Inc.*, No. 06 Civ. 2970, 2007 U.S. Dist. LEXIS 90106, * 42 (S.D.N.Y. December 6, 2007)("[I]n the Second Circuit, employers bear the burden of proof to establish an exemption only by a preponderance of the evidence").

### B.    Plaintiffs Are Exempt From Overtime Under the MCA Exemption As They Drove Trucks In Interstate Commerce, Including The Intrastate Leg Of Interstate Commerce

The FLSA generally requires employers to pay overtime wages to certain employees who work more than forty hours in a week. 29 U.S.C. § 207. The FLSA also contains a number of exemptions excluding certain employees from the overtime requirements of the FLSA. The MCA exemption, set forth in 29 U.S.C. § 213(b)(1) of the FLSA, provides that the overtime provisions of the FLSA shall not apply to:

> any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49 [The Motor Carrier Act].

29 U.S.C. § 213(b)(1).

"Congress enacted the MCA, Pub. L. No. 74-255, 49 Stat. 543 (1935), three years before the passage of the FLSA, to promote efficiency and safety in interstate motor transportation." *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 229, n.2 (2d Cir. 2002).  Whether the Secretary of Transportation establishes qualifications and maximum hours of service is immaterial; the controlling consideration is whether the Secretary has the power to do so.  Courts have consistently held that the § 213(b)(1) exemption to § 207 applies regardless of whether the Secretary of Transportation has exercised his authority to regulate a particular employee or employer.  *Bilyou*; *Zhang v Bally Produce, Inc.*, No. 12 Civ. 1045, 2013 U.S. Dist. LEXIS 57544 (E.D.N.Y. April 22, 2013)(pursuant to the Motor Carrier Exemption the FLSA's overtime requirements do not apply to certain employees who fall within the Secretary of Transportation's jurisdiction).

The MCA Exemption has been interpreted by the U.S. Supreme Court to apply to employees who work as "driver[s], driver's helper[s], loader[s], or mechanic[s]" where such work "directly affect[s] the safety of operation of motor vehicles in interstate commerce . . . within the meaning of the [Motor Carrier Act of 1935]." *Pyramid Motor Freight Corp. v. Ispass,* 330 U.S. 695 (1947); 29 C.F.R. § 782.2.  More recently, the SAFETEA-LU Technical Corrections Act of 2008, P.L. 110-244 § 306(c) clarified, *inter alia*, that the MCA Exemption applies to those individuals who work on trucks weighing more than 10,000 pounds.  As there is no material dispute that plaintiffs drove defendants trucks weighing more than 10,000 pounds, this part of the MCA exemption requirement is satisfied. (Defs' Rule 56.1 ¶ 3.)

To be involved in interstate transportation of goods, the employee need not actually transport goods across state lines. The regulations implementing the Motor Carrier Act provide

4

that the interstate commerce requirement is satisfied where "the vehicles do not actually cross State lines but operate solely within a single State, if what is being transported is actually moving in interstate commerce." 29 C. F. R. § 782.7(b)(1).  Even if a carrier's transportation does not cross state lines, the interstate commerce requirement is satisfied if the goods being transported within the borders of one State are involved in a 'practical continuity of movement' in the flow of interstate commerce." *Bilyou,* 300 F. 3d 217, 223 (2d Cir. 2002) (quoting *Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 568, 63 S. Ct. 332, 87 L. Ed. 460 (1943)).  For example, the Second Circuit, in *Bilyou* found route drivers for a beer distributor to qualify for the MCA exemption despite the fact that goods were picked up and delivered in one state because there existed a fixed and persisting intent to transport goods in interstate commerce.  The route drivers in *Bilyou* picked up empty containers that were destined for out of state bottling facilities.  The *Bilyou* court reasoned that whether the transportation is of an interstate nature can be "determined by reference to the intended final destination" of the transportation when that ultimate destination was envisaged at the time the transportation commenced" citing *Project Hope v. M/V Ibn Sina*, 250 F.3d 67, 74 (2d Cir. 2001); *Atlantic Coast Line R. Co. v. Standard Oil Co. of Kentucky*, 275 U.S. 257, 269, 48 S. Ct. 107, 72 L. Ed. 270 (1927) (determining continuity of transportation by examining whether the destination of the goods "is arranged for or fixed in the minds of the sellers"); *Klitzke v. Steiner Corp.*, 110 F.3d 1465, 1469 (9th Cir. 1997) ("Whether transportation is interstate or intrastate is determined by the essential character of the commerce, manifested by shipper's fixed and persisting transportation intent at the time of the shipment. . . .") (citation omitted) (emphasis in original); *Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670, 672 (10th Cir. 1993) ("Crucial to a determination of the essential character of a shipment is the shipper's fixed

5

and persisting intent at the time of shipment.") (quotation marks and citation omitted); 29 C.F.R.

§ 782.7(b)(2) (intrastate transportation can satisfy the interstate commerce requirement of the

M[otor Carriers Act] if the shipper has a "fixed and persisting transportation intent beyond the

terminal storage point at the time of shipment") *Bilyou*, 300 F.3d at 223-24. *See also*,

*McGuiggan v. CPC Int'l, Inc.,* 84 F. Supp.2d 470, 483 (S.D.N.Y. 2000) (motor carrier exemption

applied to drivers who delivered English muffins, baked out-of-state**,** to intrastate customers

pursuant to specific orders).

Since it is undisputed that Defendants knew the intended final destination for products

when such products were ordered from out of state for delivery to customers by Plaintiffs within

hours or a day, the MCA Exemption applies.  (Defs' Rule 56.1 ¶¶ 6 -13); *Bilyou*, 300 F.3d 217,

223-4 (2d Cir.2002)("Whether the transportation is of an interstate nature can be 'determined by

reference to the intended final destination' of the transportation when that ultimate destination

was envisaged at the time the transportation commenced…The intent at the time transportation

commences fixes the character of the shipment for all the legs of the transport within the United

States."); *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 570 (1943) (holding that a pause at

warehouse did not end interstate journey and did not, by itself, defeat exemption); *Walling v.*

*Mutual Wholesale Food & Supply*, 141 F.2d 331, 334 (8ᵗʰ Cir. 1944) (finding goods stored

temporarily in warehouse for distribution to chain of grocery stores remained in interstate

commerce); *Walling v. American Stores Co.*, 133 F.2d 840, 846 (3ʳᵈ Cir. 1943) (determining that

warehouse where retail goods were stored until shipment to retail stores did not break movement

in interstate commerce); *Hernandez v. Brink's, Inc.*, No. 08 Civ. 20717 (KMM), 2009 U.S. Dist.

LEXIS 2726 (S.D. Fla. Jan. 15, 2009) (holding defendant met interstate commerce requirement

even though plaintiffs did not engage in interstate travel because plaintiffs transported checks and other property that were destined at time of shipment for delivery to specific locations outside state); *Compton v. Rent-A-Center, Inc.*, No. 07 Civ. 972-D (TDD), 2008 U.S. Dist. LEXIS 92211 (W.D. Okla. Nov. 12, 2008), *aff'd*, 350 F.App'x 216 (10th Cir. 2009) (finding plaintiff transported goods in interstate segment of movement of goods in interstate commerce where employer obtained its merchandise directly from out-of-state vendors based on orders by customers within state).

Both the courts and the Department of Transportation ("DOT") have interpreted the DOL's "fixed and persisting" regulation broadly in cases where the final leg of shipments are not sent to a named recipient but are held in storage between legs of the trip.  The courts have held that other factors can also be considered in determining whether there is a "fixed and persisting intent" to engage in interstate commerce.  Such factors include: whether the goods were intended for particular customers (*Badgett v. Rent-Way, Inc.*, 350 F.Supp.2d 642 (W.D. Pa. 2004) (finding transportation in interstate commerce where defendant occasionally filled special orders for merchandise supplied by out of state vendors and special orders, prior to being shipped, were specifically designated for intended customer and finding list of factors to be "permissive, non-exhaustive factors for consideration")); whether the products are shipped on a "predetermined" ordering cycle (*Guyton v. Schwan Food Co.*, No. 03 Civ. 5523 (DWF), 2004 U.S. Dist. LEXIS 4174 (D. Minn. Mar. 16, 2004) *aff'd* 2005 U.S. App. LEXIS 1883 (8th Cir. Feb. 7, 2005) (applying exemption despite deliveries being made intrastate where shipments from distribution centers were based upon standing customer orders, historic buying patterns, and predicted sales to targeted customers)); *Williams v. Kenco Logistics Servs., Inc.*, No. 09 Civ. 709 – T - 26MAP

(RAL), 2010 U.S. Dist. LEXIS 66210 (M.D. Fla., Jul. 2, 2010) (finding plaintiff driver for distribution center that distributed Whirlpool appliances throughout Florida was exempt under MCA exemption because Whirlpool had "a fixed and persistent intent" to ship goods in interstate commerce even if shipment was not pursuant to specific customer orders where at least some product was ordered pursuant to projections of customer demand or based on historical sales)); whether the carrier is in continuous possession of the product until delivery (*Atlantic Indep. Union v. Sunoco Inc.*, No. 03 Civ. 4389 (BMS), 2004 U.S. Dist. LEXIS 11223 (E.D. Pa. June 16, 2004) (applying exemption where petroleum products were purchased in Pennsylvania and transported via pipeline through New Jersey and delivered to customers in New York)); the length of time that movement of the product is interrupted by storage (*Barron v. Lee Enters., Inc.*, 183 F.Supp.2d 1077 (C.D. Ill. 2002) (deeming district managers in circulation department of newspaper who made daily intrastate deliveries of newspapers exempt because newspapers delivered included preprinted and dated supplements that were shipped directly from out of state printers and that were stored only temporarily (from 2 to 10 days) in newspaper's warehouse prior to delivery)).

In 2005 the DOL issued an opinion letter, WH Admin. Op. FLSA 2005-10 (January 11, 2005) officially adopting the DOT's 1992 Policy Statement allowing consideration of additional factors relating to this issue. This has been characterized as a "less stringent" multifactor test. *The Fair Labor Standards Act* (Ellen C. Kearns *et al. eds.*, 2nd ed. 2010) § 5-49. The opinion letter explains and outlines this less stringent test:

> These newer DOT guidelines incorporate case law that developed subsequent to the cases upon which section 782.7(b)(2) was based. Thus, the DOT now provides the following factors for determining the "fixed and persisting intent" of

a shipper that merchandise continue in interstate commerce when moving goods intrastate from storage facilities:

1. Even if a shipper does not know the ultimate destination of specific shipments, it bases its determination on the total volume to be shipped through the warehouse on projections of customer demand that have some factual basis, rather than a mere plan to solicit future sales within the State. This may include, but is not limited to, historical sales in the State, actual present orders, and relevant market surveys of need.

2. No processing or substantial product modification of substance occurs at the warehouse or distribution center. However, repackaging or reconfiguring (secondary packaging) may be performed.

3. While in the warehouse, the merchandise is subject to the shipper's control and direction to the subsequent transportation.

4. Modern tracking systems allow tracking and documentation of most, if not all, of the shipments coming in and going out of the warehouse or distribution center.

5. The shipper or consignee must bear the ultimate payment for transportation charges even if the warehouse or distribution center directly pays the transportation charges to the carrier.

6. The warehouse utilized is owned by the shipper.

7. The shipments move through the warehouse pursuant to a storage in transit provision.

Citing 57 Fed. Reg. at 19813. *Advantage Tank Lines, Inc.*, No. MC-C-30198, 10 ICC 2d 64 (1994). See also *Atlantic Independent Union*, 2004 U.S. Dist. LEXIS 11223 (E.D. Pa. 2004). Most courts now follow this "totality of the circumstances" test and note that no particular factor is determinative. *The Fair Labor Standards Act* (Ellen C. Kearns *et al. eds.*, 2nd ed. 2010) § 5-51; *Musarra v. Digital Dish, Inc.*, 454 F.Supp.2d 692, 711 (S.D. Ohio 2006) ("[t]he Court recognizes that no particular factor is, in and of itself, determinative and notes that the Court's analysis should be based upon the practical realities of the transportation at issue" finding MCA exemption applies where making daily shipments of equipment to defendant was intended to ship in interstate commerce). Plaintiffs in the present case are clearly exempt under the MCA as goods were ordered for particular customers from out of state vendors; the goods were then held by Defendants until they were delivered to the customers by Plaintiffs. As such, summary

9

judgment is appropriate.

Plaintiffs' NYLL overtime claims are also subject to the MCA exemption and should therefore be dismissed. *Fox v. Commonwealth Worldwide Chauffeured Transp. of NY*, 865 F. Supp. 2d 257, 268-269 (E.D.N.Y. 2012)(granting summary judgment pursuant to the MCA exemption under both the FLSA and NYLL reasoning that: "The New York State Department of Labor takes the position that the overtime provisions contained in that law expressly incorporate the FLSA's exemptions, see 12 N.Y.C.R.R. § 142-2.2. Federal courts have followed the Department's guidance, applying FLSA exemptions to state Labor Law claims…This includes the motor carrier exemption. *See Khan v. IBI Armored Servs.*, 474 F. Supp. 2d 448, 450 & n.1 (E.D.N.Y. 2007)").

## V.    CONCLUSION

As the undisputed facts show Plaintiffs were exempt from overtime as drivers under the MCA exemption, summary judgment is warranted under the law.

Dated: Jericho, New York
      December 5, 2014

LIPMAN & PLESUR, LLP

      /s/ Robert D. Lipman
Robert D. Lipman
lipman@lipmanplesur.com
David A. Robins
robins@lipmanplesur.com
500 North Broadway, Suite 105
Jericho, NY  11753
Telephone:  (516) 931-0050
Facsimile:   (516) 931-0030

LAW OFFICES JAMES F. O'BRIEN

James F. O'Brien
jobrien@jamesfobrien.com
500 North Broadway, Suite 105
Jericho, NY  11753
Telephone:  (516) 822-9000
Facsimile:   (516) 822-1050

*Attorneys for Defendants*