UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOSE OSORIO and ROMAN XOLOCOTZI, on
behalf of themselves and as class representatives
of all those similarly situated,

                 Plaintiffs,

       -against-

MATHEWS PRIME MEATS, INC. and
MATHEW KOINIS, individually,

                Defendants.
----------------------------------------------------------X

FILED
CLERK
4/28/2015 3:22 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**DECISION AND ORDER**
13-CV-1292 (ADS)(SIL)

**APPEARANCES:**

**Brendan T. McVey, Esq.**
*Attorney for the Plaintiffs*
201 Moreland Road
Suite 10
Hauppauge, NY 11788

**The Santiago Law Firm, P.C.**
*Attorneys for the Plaintiffs*
201 Moreland Road, Suite 10
Hauppauge, NY 11788
    By: Jose G. Santiago, Esq., Of Counsel

**Hedayati Law Group, P.C.**
*Attorneys for the Plaintiffs*
900 Wheeler Road
Suite 225
Hauppauge, NY 11788
    By: Alireza Hedayati, Esq., Of Counsel

**Lipman & Plesur, LLP**
*Attorneys for the Defendants*
500 North Broadway
Suite 105
Jericho, NY 11753-2131
    By: Robert D. Lipman, Esq.
       David A. Robins, Esq., Of Counsel

**Law Offices of James F. O'Brien**
*Attorneys for the Defendants*
500 North Broadway
Suite 105
Jericho, NY 11753
      By: James O'Brien, Esq., Of Counsel

**SPATT, District Judge.**

On March 12, 2013, the Plaintiffs Jose Osorio ("Osorio") and Roman Xolocotzi ("Xolocotzi"), on behalf of themselves and all others similarly situated (the "Plaintiffs"), commenced this putative collective and class action pursuant to, among other statutory provisions, the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 216(b) against the Defendants Mathews Prime Meats, Inc. ("Mathews Prime Meats") and Mathew Koinis ("Koinis")(collectively the "Defendants"). The Plaintiffs seek to recover overtime pay allegedly owed to them by the Defendants.

Following the close of discovery, on December 5, 2014, the Defendants moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56 for summary judgment dismissing the complaint.

For the reasons set forth, the Defendants' motion for summary judgment is denied.

## I.    BACKGROUND

Unless otherwise stated, the following facts are drawn from the parties' Rule 56.1 Statements and Exhibits and construed in a light most favorable to the non-moving party, the Plaintiff. Triable issues of fact are noted.

A.  The Parties

Mathews Prime Meats is a New York-based food distribution company.

Osorio and Xolocotzi worked as delivery workers for Mathews Prime Meats. They drove

trucks which weighed over 10,001 pounds to make deliveries.  Osorio also worked as a machine operator making hamburger patties.

Koinis was at all relevant times the owner and Chief Executive Officer ("CEO") of Mathews Prime Meats.

B.  The Factual Background

The trucks that the Plaintiffs regularly drove were owned by Mathews Prime Meat.

Xolocotzi drove trucks transporting goods across state lines to and from Pennsylvania and New Jersey for one year beginning on May 19, 2012.  Xolocotzi testified that he did not know how far in advance certain customers placed their orders. (Xolocotzi Dep., at 47.)

Mathews Prime took orders from customers.  The ordered products would be taken from Mathews Prime's inventory or purchased by Mathews Prime from a local Restaurant Depot, and then delivered by the Plaintiffs to the customers. (Id. at 41-42; Osorio Dep., at 24.)  Mathews Prime ordered many products from outside of New York for delivery by the Plaintiffs to fill orders from New York-based customers. (Rule 56.1 Statement, at ¶ 11.)

## II.    DISCUSSION

A. The Legal Standard on Summary Judgment

Summary judgment may not be granted unless all of the submissions taken together "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Nunn v. Mass. Cas. Ins. Co., 758 F.3d 109, 114 n. 4 (2d Cir. 2014).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue for trial, and cannot rely merely on allegations or denials contained in the pleadings. See Fed. R. Civ. P. 56(c); accord Fabrikant v. French, 691 F.3d 193, 205 (2d Cir. 2012). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment." Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011)(citation omitted).

B. The FLSA and NYLL Claims

Congress enacted the FLSA in 1938 to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," 29 U.S.C. § 202(a), and to "guarantee [ ] compensation for all work or employment engaged in by employees covered by the Act." Tennessee Coal, Iron & Railroad Company v. Muscoda Local No. 123, 321 U.S. 590, 602, 64 S. Ct. 698, 88 L. Ed. 949 (1944). As part of that effort, the FLSA imposes numerous "wage and hour" requirements, including overtime pay, which is at issue in this case. 29 U.S.C. § 207.

Here, the Defendants do not dispute that the FLSA generally applies to Mathews Prime or its CEO, Koinis. See Acosta v. Hall of Fame Music Stores, Inc., No. 10-CV-5139 (SLT)(LB), 2015 WL 1003550, at *3 (E.D.N.Y. Mar. 5, 2015)("The FLSA broadly defines an employer to include 'any person acting directly or indirectly in the interest of an employer in relation to an employee.' 29 U.S.C. § 203(d).")(emphasis added).

Rather, the Defendant argues that the Plaintiffs fall within one of the exemptions to the overtime provisions of the FLSA, namely the Motor Carrier exemption.

Exemptions to the FLSA are "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their

4

terms and spirits." Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S. Ct. 453, 4 L. Ed. 2d 393 (1960). Defendants bear the burden of proving that the exemption applies. Bilyou v. Dutchess Beer Distributors, Inc., 300 F.3d 217, 229 (2d Cir. 2002).

The Motor Carrier exemption provides that the FLSA's overtime provision "shall not apply . . . to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to [49 U.S.C. § ]31502." 29 U.S.C. § 213(b)(1).

This exemption serves to prevent conflict between the FLSA and the Motor Carrier Act of 1935 (the "MCA"). Dauphin v. Chestnut Ridge Transportation, Inc., 544 F. Supp. 2d 266, 271 (S.D.N.Y.2008). Congress enacted the MCA "to promote efficiency, economy, and safety in interstate motor transport." Khan v. IBI Armored Services, Inc., 474 F. Supp. 2d 448, 450–51 (E.D.N.Y. 2007). To help achieve that purpose, it gave the Interstate Commerce Commission— and later, the Department of Transportation — the authority to regulate the maximum hours of work for employees of "common carriers" and "contract carriers" by motor vehicle. Masson v. Ecolab, Inc., No. 04–cv–4488 (MBM), 2005 WL 2000133, at *5 (S.D.N.Y. Aug. 17, 2005). Thus, "[s]o that the overtime provisions of the FLSA and the MCA do not overlap or interfere with each other, those employees whose working hours are regulated by the DOT are exempt from the FLSA's requirements." Id.

29 C.F.R. § 782.2 explains that for an employee to be exempt under the Motor Carrier exemption, (i) the employer must be "within the jurisdiction of the Secretary of Transportation by virtue of operating as a motor carrier or motor private carrier," as defined by 49 U.S.C. §§ 31502(b)(1) & (2), Dauphin v. Chestnut Ridge Transp., Inc., 544 F. Supp. 2d 266, 273 (S.D.N.Y. 2008)(internal quotation marks omitted); and (ii) the employee must be "engaged in activities

5

that affect the safety of operation of motor vehicles transporting property in interstate commerce." McGuiggan v. CPC Int'l, Inc., 84 F. Supp. 2d 470, 480 (S.D.N.Y. 2000); see also Carter v. Tuttnaeur U.S.A. Co., No. 13-CV-00679 (ADS)(ARL), 2015 WL 148468, at *3 (E.D.N.Y. Jan. 12, 2015).

Here, the Plaintiffs do not dispute that Mathews Prime was at all relevant times within the jurisdiction of the Secretary of Transportation by virtue of operating as a motor carrier or motor private carrier. Rather, the parties dispute whether the Plaintiffs engaged in activities that affect the safety of operation of motor vehicles transporting property "in interstate commerce."

"[T]he interstate commerce requirement is satisfied if the goods being transported within the borders of one State are involved in a practical continuity of movement in the flow of interstate commerce." Hamilton v. Newburgh-Beacon Bus Corp., No. 14 CV 624 (VB), 2014 WL 7398908, at *4 (S.D.N.Y. Dec. 4, 2014)(quoting Bilyou, 300 F.3d at 223). "Put another way, if the shipper's 'fixed and persisting transportation intent at the time of [interstate] shipment' was to deliver an item to a specified customer who had ordered the item, regardless of whether it was stored temporarily intrastate, the motor carrier exemption applies." Masson v. Ecolab, Inc., No. 04 CIV. 4488 (MBM), 2005 WL 2000133, at *6 (S.D.N.Y. Aug. 17, 2005)(quoting Bilyou, 300 F.3d at 223-24.); see also McGuiggan, 84 F. Supp. 2d at 483 (motor carrier exemption applied to drivers who delivered English muffins, baked out-of-state, to intrastate customers pursuant to specific orders).

"On the other hand, the exemption does not apply where items are delivered from out of state to an intrastate location, such as a warehouse, for future delivery to customers yet to be identified." Masson, 2005 WL 2000133, at *6. "In other words, the exemption is inapplicable where the final destination of any shipment is not decided 'until after the goods had come to rest

6

in the warehouse.'" Id. (quoting Southern Pac. Transp. Co. v. Interstate Commerce Comm'n, 565 F.2d 615, 618 (9th Cir. 1977).

Here, the Plaintiffs' transport routes were not across state lines. "Therefore, [the D]efendants must show [the Plaintiff[s'] intrastate transportation [] was part of a practical continuity of movement in the flow of interstate commerce to fall within the exemption." Hamilton, 2014 WL 7398908, at *4.

The Defendants contend that this requirement is satisfied because they "knew the intended final destination for products when such products were ordered from out of state for delivery to customers by [the] Plaintiffs within hours or a day." (Doc No. 34, at 6.)

It is undisputed that any intrastate transport by the Plaintiffs of goods ordered from specific out-of-state customers constitutes "interstate commerce" for purposes of the Motor Carrier exemption. However, the parties disagree as to how much of the Plaintiffs' intrastate activities were of this character, and whether this quantum of activities was sufficient to bring them under the DOT's jurisdiction.

Whether a particular portion of travel is involved in a practical continuity of interstate movement "depends upon the essential character of the movement." Baltimore & Oh. Sw. R.R. Co. v. Settle, 260 U.S. 166, 170, 43 S. Ct. 28, 67 L. Ed. 189 (1922); Bilyou, 300 F.3d at 223–24. "[D]etermining the 'character' of interstate driving involves a fact-specific analysis, including an examination of the method by which the employer assigns the interstate activity to the pertinent class of employees, the nature of the employer's business, and perhaps to a lesser degree, the proportion of interstate-to-intrastate employee activity." Masson, 2005 WL 2000133, at *9.

The relevant Department of Labor regulations provide:

(2) . . . . In determining whether an employee falls within [the motor carrier exemption], neither the name given to his position nor that given to the work that

7

> he does is controlling (Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695; Porter v. Poindexter, 158 F.—(2d) 759 (C.A.10); Keeling v. Huber & Huber Motor Express, 57 F. Supp. 617 (W.D. Ky.); Crean v. Moran Transp. Lines (W.D.N.Y.) 9 Labor Cases, par. 62,416 (see also earlier opinion in 54 F. Supp. 765)); what is controlling is the character of the activities involved in the performance of his job.
>
> (3) As a general rule, if the bona fide duties of the job performed by the employee are in fact such that he is (or, in the case of a member of a group of drivers, driver's helpers, loaders, or mechanics employed by a common carrier and engaged in safety-affecting occupations, that he is likely to be) called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities of the character described in paragraph (b)(2) of this section, he comes within the exemption in all workweeks when he is employed at such job.  This general rule assumes that the activities involved in the continuing duties of the job in all such workweeks will include activities which have been determined to affect directly the safety of operation of motor vehicles on the public highways in transportation in interstate commerce.  Where this is the case, the rule applies regardless of the proportion of the employee's time or of his activities which is actually devoted to such safety-affecting work in the particular workweek, and the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting "safety of operation."  On the other hand, where the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis, the exemption will not apply to him in any workweek so long as there is no change in his duties. (Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695; Morris v. McComb, 332 U.S. 422; Levinson v. Spector Motor Service, 330 U.S. 649; Rogers Cartage Co. v. Reynolds, 166 F. (2d) 317 (C.A.6); Opelika Bottling Co. v. Goldberg, 299 F. (2d) 37 (C.A.5); Tobin v. Mason & Dixon Lines, Inc., 102 F. Supp. 466 (E.D. Tenn.))  If in particular workweeks other duties are assigned to him which result, in those workweeks, in his performance of activities directly affecting the safety of operation of motor vehicles in interstate commerce on the public highways, the exemption will be applicable to him those workweeks, but not in the workweeks when he continues to perform the duties of the non-safety-affecting job.
>
> (4) Where the same employee of a carrier is shifted from one job to another periodically or on occasion, the application of the exemption to him in a particular workweek is tested by application of the above principles to the job or jobs in which he is employed in that workweek . . . .

29 C.F.R. § 782.2(b).

In Morris v. McComb, 332 U.S. 422, 68 S. Ct. 131, 92 L. Ed. 44 (1947), the Supreme Court held that although only 3.65 percent of the total trips made by the drivers of a general carriage business were out of state, the carrier was exempt from the overtime provision of the FLSA as to all drivers and certain mechanics.

The Court based its decision on a few key characteristics of the carrier's regular operations. First, the carrier did not distinguish between the interstate and intrastate routes and assigned the routes indiscriminately to all its drivers; thus, individual drivers at any time could be called on to drive across state lines. A closer look at the statistics revealed that each driver's interstate travel was more significant than was suggested by the 3.65 percent figure. Approximately one-quarter of all of the drivers made at least one interstate trip in each week of the relevant time period. There was a six-week period in which more than half the drivers made an out-of-state trip. Throughout the year, all but two of the drivers made at least one interstate trip.

Finally, the Court found the general nature of the carrier's business significant: the carrier offered "to serve the normal transportation demands of the shipping public in an industrial metropolitan center [Detroit, Michigan]. . . . If the common carrier is required, by virtue of that status, to take this interstate business he must perform the required service in accordance with the requirements established by the [Interstate Commerce] Commission." Id. at 434. In sum, the interstate trips were "a natural, integral and apparently inseparable part of the common carrier service of the petitioner and his drivers." Id. at 433.

The Department of Labor regulations emphasize that Morris found that all of the drivers in that case were exempt "even though the interstate driving o[f] particular employees was

9

sporadic and occasional, and in practice some drivers would not be called upon for long periods to perform any such work." 29 C.F.R. § 782.2(c)(1)(citing Morris, 332 U .S. 422).

Some courts have applied a de minimus exception or requirement to the Motor Carrier exemption. "It appears that courts refer to 'de minimis' activities for three possible purposes: (1) to find that the employee's activities in relation to safety in interstate commerce may be so trivial as to take the employee out of the motor carrier exemption; (2) to permit an employer to take advantage of the motor carrier exemption on the mere showing that the employee's activities in relation to safety in interstate commerce are more than de minimis; and (3) to refuse to apply the motor carrier exemption altogether if can be shown that the employer's activities in interstate commerce are de minimis in relation to the employer's activities overall." Williams v. Tri-State Biodiesel, L.L.C., No. 13 CIV. 5041 (GWG), 2015 WL 305362, at *12 (S.D.N.Y. Jan. 23, 2015).

"Also important is whether, or to what extent, certain orders were made with particular customers in mind . . . in anticipation of having to meet a particular customer's future needs." Masson, 2005 WL 2000133, at *10.

In Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S. Ct. 332, 87 L. Ed. 460 (1943) the Supreme Court considered such circumstances when it formulated the following framework for determining whether intrastate movements are "interstate" for purposes of the Motor Carrier exemption:

> The entry of the goods into the warehouse interrupts but does not necessarily terminate their interstate journey. A temporary pause in their transit does not mean that they are no longer 'in commerce' within the meaning of the Act. . . . [I]f the halt in the movement of the goods is a convenient intermediate step in the process of getting them to their final destinations, they remain 'in commerce' until they reach those points. Then there is a practical continuity of movement of the goods until they reach the customers of whom they are intended. That is sufficient. Any other test would allow formalities to conceal the continuous nature of the interstate transit which constitutes commerce.

10

317 U.S. at 568. The Court envisioned three circumstances when goods were brought from out of state but sold and distributed to customers within the state:

> i) Goods purchased by the wholesaler or distributor upon order of a customer with the definite intention that they be carried at once to the customer;
>
> ii) Goods obtained by the wholesaler or distributor to meet the needs of specified customers pursuant to an "understanding," contractual or otherwise, although not for immediate delivery; and
>
> iii) Goods based on anticipation of customer need, rather than upon prior orders or contracts.

The Court held that the goods in the first two categories remain in interstate commerce until the time they are delivered to the retail customers. Goods in the third category could be held to remain in interstate commerce only when there is a "particularity" of evidence relating to a product and a customer, as opposed to "goods acquired and held by a local merchant for local disposition" to the general public. Id. at 570.

Here, at this stage of the litigation, the Court finds that the Defendants cannot avoid FLSA overtime liability, as a matter of law, by virtue of the Motor Carrier exemption. This is because there remain genuine issues of material fact, including (1) the method by which Mathew Prime assigned the interstate and intrastate activity to the Plaintiffs and (2) the percentage of the Plaintiffs' intrastate routes that were based on products ordered from out of state to be delivered to specific customers versus intrastate routes that were filled based on products from Mathew Prime's inventory.

In this regard, although the Defendants have produced a list of about 100 "Special Orders" purchased from out-of-state entities to be delivered to specific in-state customers, that document is short on detail, including dates and costs. In addition, there is no indication that the listing was composed "in the ordinary course of business" and would, therefore, be admissible at

11

trial as an exception to the rule against hearsay under Federal Rule of evidence 803(6). See Ravenell v. Avis Budget Grp., Inc., No. 08-CV-2113 (SLT)(SMG), 2014 WL 1330914, at *2 (E.D.N.Y. Mar. 31, 2014)("a movant who relies on business records must introduce those records in a manner, typically through a custodian's affidavit, that identifies them and establishes that they are admissible under Federal Rule of Evidence 803(6)."); Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc., 04CV2293 (JFB)(SMG), 2007 WL 74304, at *3 (E.D.N.Y. Jan. 8, 2007)("[W]hen offering business records in support of a motion for summary judgment, in order to avoid the bar against hearsay, the offering party should present an affidavit 'from a document custodian' that 'explain[s] whether [the records] were kept in the ordinary course of business,' although that person 'need not have personal knowledge of the actual creation of the document.'")(quoting Tradax Energy, Inc. v. Cedar Petrochemicals, Inc., 317 F. Supp. 2d 373, 378–79 (S.D.N.Y. 2004)).

Accordingly, for purposes of the present motion for summary judgment, the Court may not rely on that document. See Flaherty v. Coughlin, 713 F.2d 10, 14 (2d Cir. 1983)(finding "verification . . . a prerequisite to grant summary judgment" where motion was "accompanied by a variety of relevant documents but without verification either that they were authentic or that they constituted all the relevant documents in the defendants' possession"); Singh v. Bay Crane Servs., Inc., 11 CV 720 (RJD)(RER), 2013 WL 5655931, at *2 n. 4 (E.D.N.Y. Oct. 11, 2013) (noting that while documents "certainly appear to be admissible business records, they are not self-authenticating, and the declaration of [the plaintiff's] attorney does not provide the Court with all the information necessary to establish their admissibility under Federal Rule of Evidence 803."); Kasper Global Collection & Brokers, Inc. v. Global Cabinets & Furniture Mfrs. Inc., 952

12

F. Supp. 2d 542, 573 (S.D.N.Y. 2013)(declining to consider invoices submitted in support of summary judgment motion because movant did not demonstrate their admissibility).

Further, even if the Court could consider the document at this time, its probative value is unclear because it does not indicate what percentage of the Plaintiffs' intrastate routes were based on such "Special Orders."

Conversely, the Court notes that Mathews Prime had a warehouse for storage of products that occupied three quarters of its physical location (Koinis Dep., at 19.) and a "small display area in part of the warehouse" where individual customers could buy products individually. (Id. at 9.) A reasonable juror could credit this testimony and construe it to weigh against the alleged interstate character of the Plaintiffs' intrastate transport routes.

Viewed this way, as in Masson, it is disputed at this stage whether it was only under "extraordinary" circumstances that the Plaintiffs transported items ordered by Mathews Prime from out-of-state entities to be delivered to specific in-state customers, or "likely" that they could be "called upon in the ordinary course of [their] work" to do so. 29 C.F.R. § 782.2(b)(3).

As noted above, a determination of the applicability of the Motor Carrier exemption "requires a detailed, fact-specific inquiry." Romero v. Flaum Appetizing Corp., No. 07 Civ. 7222(BSJ)(JCF), 2011 WL 812157, at *4 (S.D.N.Y. Mar. 1, 2011); see also Perez v. Time Moving & Storage Inc., No. 08 Civ. 2775 (CM), 2008 WL 5662070, at *2 (S.D.N.Y. Jan. 15, 2008)("[A]s long as the facts pleaded about their job duties render it plausible that plaintiffs fall outside the [motor carrier] exemption, the complaint cannot be dismissed.").

However, here, while the Defendants' memorandum of law and reply memorandum in support of the present motion for summary judgment aptly marshal the relevant case law, they do very little to set forth evidence supporting application of the Motor Carrier exemption to this

13

case. Indeed, the Defendants rely almost exclusively on the listing of approximately 100 specific customers. However, as previously stated, it is unclear if this listing would be admissible at trial, and even if it was, its lack of details compels a ruling that the Defendants have not established the absence of a genuine issue of material fact, much less entitlement to dismissal of the complaint based on the Motor Carrier exemption.

In sum, at this stage of the litigation and construing the Motor Carrier exemption narrowly and strictly against the Defendants, the Court finds that the Defendants have not discharged their burden of showing that the Plaintiffs engaged in activities affecting the safety of operation of motor vehicles transporting property in interstate commerce. In the Court's view, the Motor Carrier exemption does not "plainly and unmistakably" apply at this time, and accordingly, the motion for summary judgment dismissing the Plaintiffs' federal overtime pay claim is denied. Bilyou, 300 F.3d at 222 (citing Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S. Ct. 453, 4 L. Ed. 2d 393 (1960)).

The Plaintiffs also allege an identical NYLL overtime claim under 12 N.Y.C.R.R. § 142–2.2. Section 142–2.2 is the New York equivalent of the FLSA and provides that an employer's overtime obligations are subject to the federal Motor Carrier exemption. See Dauphin, 544 F. Supp. 2d at 277. Accordingly, for the same reasons the motion for summary judgment is denied with respect to the Plaintiffs' FLSA overtime claim, the motion for summary judgment to dismiss the Plaintiffs' corresponding state law claim for overtime pay is also denied.

### III. CONCLUSION

Based on the foregoing reasons, the Defendants' motion for summary judgment is denied.

**SO ORDERED.**

Dated: Central Islip, New York
April 28, 2015

                                                    *Arthur D. Spatt*
                                                    ARTHUR D. SPATT
                                                    United States District Judge